YARRUT, Judge.
Plaintiff, as contractor, 'sues Defendant, as the owner, to recover $1,226.25 (which includes $2.25 cost of recording a lien) the amount due it under written proposal wherein Plaintiff agreed to install a new roof and perform certain sheet metal work on Defendant’s premises, 1117 Decatur Street in New Orleans. Judgment 'was rendered in favor of' Plaintiff and Defendant has taken this appeal.
*388 The architect who examined Plaintiff’s work made a written report of defects he found, listed as follows:
1. The roofing shingles used by Plaintiff were not of the brand name called for in the contract;
2. The shingles used were of inferior quality to the brand name called for in the contract;
3. Many of the shingles used were cracked and broken shortly after installation was completed;
4. The ridged tiles on the roof in question were not cemented at overlaps;
5. The flashing at the fire walls and chimneys was inadequate;
6. The flashing around dormers was not water-tight and allowed water to enter attic;
7. Windows in the dormers were improperly installed. Window stops were nailed directly to framing members and not to trim.
Defendant reconvened and prayed that the Plaintiff be ordered to specifically perform the contract for the installation of the roof and the removal of the inferior quality of shingles and replace them with the “American Colonial” shingles, and various other alleged complaints be corrected.
The lower court rendered judgment in favor of Plaintiff for $1,226.25, with legal interest from judicial demand until paid, together with all costs, and dismissed Defendant’s reconventional demand.
The main complaint seems to be the alleged failure of Plaintiff to apply to the roof the agreed type of shingles. The proposal reads: “* * * We will apply over felt American Colonial asbestos shingles. ‡ ‡ íjí »
To prove the alleged defective workmanship, Defendant called as a witness, Homer Horton, Jr., an architect who made an inspection of the job after completion. A review of Mr. Horton’s testimony shows that, for the most part, the defects complained of are either inconsequential, or unfounded. For example, complaint is made that many of the shingles installed were cracked or broken. The testimony at the trial and the pictures introduced show that, at most, only ten or twelve shingles were cracked. In this connection, Mr. Plorton made his original inspection of the roof on January 8, 1965, during which he necessarily had to walk on the roof. The pictures introduced in evidence, taken by Mr. Horton on August 5, 1965, suggest that some, if not all, of the shingle breakage may have been caused by Mr. Plorton in making his inspection of the roof.
With reference to the complaint that the ridge tiles were not cemented at overlaps, Mr. Iiorton stated that he would insist that this be done but admitted, on cross-examination, that many roofers customarily do not cement the tile overlaps. Mr. Chassaniol testified that it is not the custom in the roofing trade to cement this particular type of tile.
Another complaint is that the flashing in the fire walls and chimneys are inadequate and would crack in a short time, causing the roof to leak. However, Mr. Horton, who made at least two inspections of the roof, admitted under cross-examination that the flashing had not cracked, and that, up until the time of the trial, the roof was not leaking. A picture was introduced as evidence of poor workmanship, in that the felt paper was left exposed. On cross-examination and interrogation by the Court, Mr. Horton admitted it is the custom in the trade to let the felt overlap and “hang out” from the edge of the shingles for extra protection.
Finally, Defendant complains of defective work not even called for in the contract, and of work which Mr. Plorton merely found to be unattractively done.
Even assuming the above-mentioned defects or improper workmanship did exist, Mr. Chassaniol testified it would cost only about $85.00 to remedy these complaints, yet *389 Defendant made no effort to have the work corrected and deduct the cost from the contract price.
Defendant’s main complaint is that the roofing shingles used by Plaintiff were not the brand called for in the contract, and were inferior to those called for. Defendant contends that the phrase “American Colonial,” in the written proposal made by Plaintiff, could only refer to the trade name of the shingle manufactured by the Johns-Manville Company, and that Plaintiff failed to comply with the contract when it used a shingle manufactured by the Supradur Company. In this connection Defendant introduced evidence to show that the Johns-Manville Company manufactures an asbestos shingle with the trade name of “American Colonial.”
Plaintiff’s answer to this contention is the testimony of Clifford F. Raymond, a roofer, who was accepted by the Court as an expert. Mr. Raymond testified that the phrase “American Colonial” refers to a type or pattern of asbestos shingle; that he had inspected the job in question; that he was familiar with the shingles used on this job and that, if he had a contract calling for the installation of an American Colonial style asbestos shingle, he would consider using the Supradur shingle used by Plaintiff; and that the terms “American Method” and “American Colonial” are used in the roofing trade interchangeably. Defendant’s own expert, Mr. Horton, when asked on direct examination whether the terms “American Method” and “American Colonial” were synonymous, could only answer, “not necessarily.”
Plaintiff also produced as a witness Charles Johnson, an employee of Crescent Materials Service. He testified that his company furnished the shingles used by Plaintiff on this job; that he was familiar with practically all of the types of roofing material used in the trade; that the term “American Colonial” is used in the trade to designate only a certain type of shingle, which is not restricted to a particular brand of shingle manufactured by any one company; that the phrase “American Method type multiple strip shingle” and the phrase “American Colonial shingle” refer to the same type of asbestos shingle; and that the Supradur shingle installed by Plaintiff in this case was an “American Colonial” style shingle. Mr. Johnson also testified that the Supradur shingle is of the highest quality and is the only brand manufactured which carries a thirty-year warranty.
Mr. J. H. Phillips, an architect employed as an inspector for the Vieux Carre Commission also appeared for Plaintiff. He testified that he issued the permit to Plaintiff for the work involved in this case, which called for re-roofing the building with “am-colonial Asbestos Shingles;” that, in order to comply with Vieux Carre Commission regulations, an asbestos shingle is acceptable only if it is an American Colonial type shingle; that he inspected the work upon completion, and that the job in question, and specifically the type of asbestos shingles installed, complied with the permit and with the Vieux Carre Commission regulations. Mr. Phillips stated, on cross-examination, that a specification calling for “American Colonial” asbestos shingle did not necessarily connote the shingle manufactured by the Johns-Manville Company.
In view of the uncontradicted testimony of these three disinterested witnesses, Plaintiff proved that the term “American Colonial” is used in the roofing trade to refer to a pattern or type of asbestos shingle, and that the Supradur shingle applied by Plaintiff on the Defendant’s roof is an American Colonial style shingle and complied with the agreement for the roof installation.
The basic issue in this case is a question of fact, namely, whether the parties had agreed that a particular manufacturer’s product would be used; therefore, the trial judge’s decision is entitled to great weight, and should not be reversed *390 by this Court unless manifestly erroneous and particularly since we fully agree with it.
The judgment of the District Court is affirmed; Defendant to pay all costs of appeal.
Judgment affirmed.